OPINION
{¶ 1} Appellant, Gabriel Mays, contends that the trial court should have credited a $23,640 judgment against him with a $50,000 payment that Appellees, Ted and Linda Fields, received before trial from Mays's insurer pursuant to a settlement agreement. The *Page 2 
Fieldses, however, believe that in addition to the $26,360 beyond the value that the jury placed on their injuries that they already received, they are also entitled to the full amount of the judgment.
 {¶ 2} On a sunny winter day in December 2004, while delivering mail along his usual rural route, and having just stopped his mail-truck at the next mailbox, Ted Fields was hit from behind by a car negligently driven by Mays. Fields sued for economic and non-economic damages. He was joined in the suit by his wife, Linda Fields, who claimed a loss of consortium. They sued not only Mays but also Mays's father-in-law, Steven Creager, the owner of the car. He, though, was dismissed on summary judgment.
 {¶ 3} The accident invoked the liability provisions of two insurance policies. Mays held an auto insurance policy with State Farm Insurance Company, and Creager held a similar policy with Cincinnati Insurance Company (CIC). (Neither insurer is a party in the lawsuit.) Each policy has the same liability coverage limit of $100,000. Early on, the two insurers agreed between them that each would pay a pro-rata share of Mays's ultimate liability up to the coverage limit of their policies (i.e., each would pay up to $50,000 for a total of $100,000).
 {¶ 4} Sometime before trial, CIC evidently decided that it wanted out. Its attorney, acting for Mays, presented the Fieldses with aProposed Interim Settlement Release Agreement. The Agreement recounts the accident and describes the pro-rata insurance coverage arrangement. It then states that "Ted Fields and Linda Fields claim that they suffered personal injuries because of the accident," the reason for their lawsuit. The Agreement further states that the Fieldses accept CIC's pro-rata liability limit of $50,000, and in exchange they agree not to seek from either Mays or CIC any amount above $50,000 to which the jury's verdict entitles them. The Agreement is *Page 3 
signed by the Fieldses and Mays.
 {¶ 5} The case went to trial in early 2008. The jury awarded Ted Fields $21,640 in compensation for his injuries and awarded Linda Fields $2,000 to compensate her for her loss of consortium. Combining the jury's verdicts, the trial court entered a $23,640 judgment against Mays.
 {¶ 6} Mays filed a post-judgment motion asking the court to credit this judgment with the $50,000 payment that the Fieldses already received from CIC. Because this payment was larger than the judgment, Mays also asked the court for an order for satisfaction of judgment. The trial court refused to grant either of his requests. He appealed and now assigns error to the court's refusal to credit the judgment.
 {¶ 7} The overarching goal of the tort system is to make an injured person whole. Accordingly, this is the measure of a plaintiff's damages. While there is "no rigid rule against overcompensation," McDermott, Inc.v. AmClyde (1994), 511 U.S. 202, 219, 114 S.Ct. 1461, 128 L.Ed.2d 148
(giving the example of the collateral source rule), windfalls are disfavored. See Thompson v. Elbert (Feb. 21, 2001), Lorain App. No. 99CA007476, at *3. The law gives a jury (in a jury trial) the responsibility to determine the amount of money necessary to make a plaintiff whole. The jury, in essence, places a value on the plaintiff's injuries and awards damages. If the trial court agrees with the jury's valuation, it enters a judgment in that amount against the defendant.
 {¶ 8} Payments made to compensate a plaintiff for her injuries may or may not be credited to this judgment liability. "A payment made by atortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability." *Page 4 
Restatement of the Law 2d, Judgments (1979), Section 920A(1) (emphasis added). As Comment a explains, "This is also true of payments made under an insurance policy that is maintained by the defendant." Id. at Comment a. Conversely, "Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." Id., Section 920A(2) (emphasis added). Thus, whether the judgment is credited depends on who made the payment.
 {¶ 9} The latter rule is commonly referred to as the collateral source rule. This rule is "the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer." Roberts v. StateFarm Mutual Auto. Ins. Co., 155 Ohio App.3d 535, 2003-Ohio-5398, at ¶ 69. These are sources that are "wholly independent of the wrongdoer," id., sources other than "the defendant or a person acting for him." Restatement, Section 920A, Comment b.
 {¶ 10} Here, the payment made to the Fieldses was from a policy maintained by Mays's father-in-law, not Mays himself. Is CIC then a collateral source? No, because although the policy is not maintained by Mays, CIC is not acting wholly independent of him but is instead acting for him. CIC has a duty to indemnify Mays just like that of his own insurer, State Farm. Indeed, CIC acknowledged its obligation to indemnify him for any judgment (up to $50,000) against him. But, rather than wait to see what the jury awarded, CIC decided it best to settle with the Fieldses and to pay the limits of its pro-rata liability for their "personal injuries." Therefore, any payment from CIC is, in effect, from Mays and the collateral source rule does not apply to bar the payment from being credited to his tort liability. See Chambers v.Pinson (1966), 6 Ohio App.2d 66, 68, *Page 5 216 N.E.2d 394 (finding that payment made to the plaintiff pursuant to an automobile insurance policy held by the defendant is not a payment from a collateral source).
 {¶ 11} We are not dealing with an express agreement by a judgment obligee, entered into before judgment is rendered, that a payment made to the obligee before judgment shall be credited toward satisfaction of the judgment. This was the situation in Edwards v. Passarelli Bros.Automotive Service, Inc. (1966), 8 Ohio St.2d 6, and was of obvious significance to the court in avoiding the res judicata problem that would otherwise beset any procedure that allows facts and circumstances known to the parties before judgment, but not then brought to the attention of the trial court, to be urged, after judgment, as a basis for modifying the judgment:
 {¶ 12} "At the outset, we note that the very terms of the `Receipt for Advance Payment' create no right in defendant or his insurer until the existence of `any final settlement or judgment.' That being so, defendant or his insurer has no existing right until the occurrence of such an event, and the provisions of the counterclaim statute, Section 2309.16, Revised Code, prohibit defendant from asserting any such right not already in existence at the time of the trial of this cause. In short, defendant could not assert a right to credit for advance payments at the trial of this cause because prior to final judgment therein no such right existed. Thus, plaintiff's argument that the principle ofres judicata controls defendant's attempt to obtain credit for advance payments has no application to the case at hand." Id., at 8-9.
 {¶ 13} We concede that Chambers v. Pinson, supra, a decision of the First District Court of Appeals, quoted approvingly in Edwards v.Passarelli Bros. Automotive Service, Inc., supra, stands for the proposition that a pre-judgment payment that, like the one in the case before us, not accompanied by an express *Page 6 
agreement that it may be credited against a subsequent judgment, may, nevertheless be used as a basis for a post-judgment motion to credit the amount of that payment toward satisfaction of the judgment. In accord,Thompson v. Elbert (February 21, 2001), Lorain App. No. 99CA007476, a decision of the Ninth District Court of Appeals. On the other hand,Coffman v. Phillips (1997), 120 Ohio App.3d 453, a decision of the Third District Court of Appeals, like Edwards v. Passarelli Bros. AutomotiveService, Inc., supra, involved an express undertaking, by the person paid, that the amount of the payment would be credited against any final settlement or judgment. Id., at 454.
 {¶ 14} Of importance to the court in Chambers v. Pinson, supra, was that by providing for a post-judgment motion to credit a pre-judgment payment toward satisfaction of the judgment, "[s]uch a procedure will prevent any interference with the trial by insertion of extraneous insurance matters." Id., at 68. This advantage of the post-judgment motion procedure was noted by the Supreme Court of Ohio in Edwards v.Passarelli Bros. Automotive Service, Inc., supra, at 9, although the holding in that case was that a pre-judgment agreement to credit a pre-judgment payment toward satisfaction of any judgment later awarded is enforceable through a post-judgment motion to credit the pre-judgment payment toward satisfaction of the judgment.
 {¶ 15} We are content that a pre-judgment agreement between parties to litigation that a pre-judgment payment shall be credited toward satisfaction of any judgment later rendered may be enforced by a post-judgment motion. We find troubling, however, the notion that the danger of contamination of the jury with "extraneous insurance matters" outweighs the danger posed by allowing, in the absence of an express agreement between the parties, a post-judgment motion to modify a judgment based upon facts and circumstances known to the parties that were *Page 7 
not brought to the attention of the trial court before judgment.
 {¶ 16} We see no practical obstacle to the party who has made a pre-judgment payment bringing that payment to the attention of the trial court before the jury has rendered its verdict, and seeking a credit, in the judgment to be awarded on the verdict, based upon that payment. This would be an application to the trial court that need not be made known to the jury.
 {¶ 17} On the other hand, opening the door to post-judgment motions to modify a judgment based upon facts and circumstances, known to the parties before the judgment was rendered, but not brought to the attention of the trial court, seems to undermine the principle of finality of judgment. The essential function of a judgment of a court of law is to fix and determine, as of the date of the judgment, the rights, obligations, and liabilities of the parties concerning the res judicata — the subject-matter of the lawsuit. With the exceptions of the vehicles of appeal and of motions for relief from judgment under Civ. R. 60(B), a judgment adjudicating the rights, obligations, and liabilities of the parties ought not to be mutable, a "version 1.0" if you will, to be replaced down the road with judgment 2.0, judgment 2.1, etc., as additional facts and circumstances are brought to the attention of the trial court that require a modification of the current version of the judgment to prevent a windfall to the other party.
 {¶ 18} Now of course the parties to a judgment can agree to its modification. They can do this after judgment, and we see no reason why they should not be allowed to enter into an enforceable agreement prospectively, before a judgment is rendered. That is what happened inEdwards v. Passarelli Bros. Automotive Service, Inc., supra, and inCoffman v. Phillips, supra. A party receiving a payment before judgment agreed that the payment would be credited toward satisfaction against any *Page 8 
judgment subsequently rendered. But in the case before us, there has not been an undertaking, prospectively or otherwise, to modify the amount of the judgment.
 {¶ 19} In our view, permitting a judgment to be modified, or adjusted, based upon payments made before the judgment was rendered, or based upon any other facts and circumstances occurring before the judgment was rendered, other than by the express agreement of the parties, is a slippery slope that endangers the efficacy and finality of judgments.
 {¶ 20} In any event, the express agreement entered into between Fields and Mays provided that Fields would not attempt to enforce a judgment in excess of $50,000 against Mays. It did not expressly provide for the possibility that the jury verdict would be for less than that amount.
 {¶ 21} Also, a private agreement between CIC and State Farm cannot control the obligations imposed by R.C. 3929.06(A)(1) on either insurer with respect to the limits of liability in their respective policies, because their agreement cannot reduce the stated liability limit in either policy. That limit in each case is $100,000, not $50,000, as the agreement misrepresents, and the Fieldses' mistaken acknowledgment of that misrepresented fact does not render it true. The agreement between CIC and State Farm is nothing more than an exchange of mutual promises by the two insurers to share equally the first $50,000 of damages that either company pays the Fieldses on behalf of that company's insured from its $100,000 policy limit.
 {¶ 22} Even were State Farm entitled to a full benefit of $50,000 from the payment CIC made, that would not affect State Farm's obligation to pay the Fieldses the full amount of their $23,640 judgment against Mays. In Edwards v. Passarelli Bros., the Supreme Court held: "Where an advance payment is made to a possible *Page 9 
tort-claimant upon condition that such payment is to be credited to the amount of any final settlement or judgment in favor of such tort-claimant, such sum shall be credited to any final judgment in a hearing upon a motion for an order for satisfaction of judgment." (Syllabus by the Court, paragraph 2, Emphasis supplied.)
 {¶ 23} The agreement between Mays and the Fieldses contains no express "credit" provision, which was present in Edwards. More importantly, the agreement does not provide that the $50,000 the Fieldses were paid by CIC would be credited against "any" final judgment, but only that in the event "a jury returns a verdict in excess of $50,000.00, Ted Fields and Linda Fields agree not to enforce the judgment against the assets of the defendants," . . . and instead to "collect any amount over the $50,000.00 paid by Cincinnati Insurance Company from State Farm Mutual Insurance Company." That promise does not preclude the Fieldses from collecting a judgment entered on a verdict against Defendant Mays in the lesser amount of $23,640 from Mays' insurer, State Farm, pursuant to R.C. 3929.06(A)(1).
 {¶ 24} The trial court did not err when it denied State Farm's motion. We Affirm.
GRADY and FROELICH, JJ., concur. *Page 1